United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SATYA DEVI JAGAR,<br><br>    Plaintiff,<br><br>  v.<br><br>JUANITA JAGAR, et al.,<br><br>    Defendants.<br>_____/<br>AND RELATED COUNTERCLAIM<br>_____/ | No. C-09-01455 EDL<br><br>**ORDER GRANTING DEFENDANT BARKER BLUE DIGITAL IMAGING, INC. 401(K) PLAN'S MOTION TO DISMISS AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Satya Devi Jagar and Defendants Juanita Jagar, Vijay Jagar, Rajesh Jagar and Dinesh Jagar dispute the entitlement to the proceeds of decedent Pyara Jagar's 401(k) plan, which is administered by Defendant Barker Blue Digital Imaging, Inc. 401(k) Plan ("The Plan") and governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101, et seq. Plaintiff has filed a motion for summary judgment, arguing that the Court should enforce the Plan Trustee's May 5, 2009 decision that Plaintiff is entitled to the Plan proceeds. Defendant Plan moves to dismiss the cross-complaints of Juanita Jagar, Vijay Jagar, Rajesh Jagar and Dinesh Jagar on the grounds that the claims in the cross-complaints are preempted by ERISA. These motions were fully briefed, and the Court held a hearing on November 17, 2009. For the reasons stated at the hearing and in this Order, Defendant Plan's motion to dismiss is granted and Plaintiff's motion for summary judgment is granted.

**Motion to Dismiss**

**Facts**

Juanita Jagar was married to Pyara Jagar from 1974 until their divorce in 1999. See Juanita Jagar Cross-Complaint ¶ 6; Jagar sons Cross-Complaint ¶ 7. During their marriage, Juanita and Pyara Jagar had three sons, Tijay Jagar, Rajesh Jagar and Dinesh Jagar. See Juanita Jagar Cross-Complaint ¶ 7; Jagar sons Cross-Complaint ¶ 6. Pyara Jagar died on April 16, 2005. See Juanita Jagar Cross-Complaint ¶ 8; Jagar sons Cross-Complaint ¶ 8.

Pyara Jagar was the beneficiary of a 401(k) Plan administered by Barker Blue Digital Imaging 401(k) Plan. See Juanita Jagar Cross-Complaint ¶ 9; Jagar sons Cross-Complaint ¶ 9. Juanita and Pyara Jagar were also the joint owners of approximately $300,000 that was held in another retirement account subject to ERISA, and that Pyara Jagar rolled over to the Plan. See Juanita Jagar Cross-Complaint ¶ 10. The Plan expressly represented that rollover contributions would be placed in a separate account. See Juanita Jagar Cross-Complaint ¶ 10.

The Jagar sons allege that the Plan Proceeds are due to them as the designated beneficiaries of the Plan. See Jagar sons Cross-Complaint ¶ 11. Juanita Jagar claims that a portion of the Plan proceeds are due to her. See Juanita Jagar Cross-Complaint ¶ 15. Plaintiff, Pyara Jagar's second wife, also claims that the Plan proceeds are due to her as the surviving spouse of Pyara Jagar. See Juanita Jagar Cross-Complaint ¶ 17; Jagar sons Cross-Complaint ¶ 14. All cross-claimants allege that the Plan is improperly seeking to deduct fees, costs and expenses related to this litigation from the Plan Proceeds which are to be distributed to Pyara Jagar's beneficiaries. See Juanita Jagar Cross-Complaint ¶ 19; Jagar sons Cross-Complaint ¶ 16.

Cross-claimants allege claims for: (1) Recovery of Benefits Due and Wrongfully Withheld; (2) Breach of Fiduciary Duty; (3) Negligent Administration of the Plan; and (4) Breach of Agreement - Third Party Beneficiary. The Plan moves to dismiss both Cross-Complaints on the grounds that all of the claims are preempted by ERISA.

**Legal Standard**

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)

(citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal quotation marks omitted) & 1950. That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**Discussion**

The Plan seeks dismissal of the Jagars' cross-complaints on the grounds that their claims are preempted by ERISA. ERISA supersedes any and all state laws insofar as they relate to any employee benefit plan. See 29 U.S.C. § 1144(a). To determine whether a state law "relates to" an ERISA plan, the Court, in light of ERISA's objectives, should look to the law's nature and effect on the plan. See Dishman v. Unum Life Ins. Co., 269 F.3d 974, 980 (9th Cir. 2001) (quoting Egelhoff v. Egelhoff, 532 U.S. 141, 147 (2001)); Bast v. Prudential Ins. Co. of Am., 150 F.3d 1003, 1007 (9th Cir. 1998) ("'To determine whether a state law has the forbidden connection, we look both to "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive," as well as the nature of the effect of the state law on ERISA plans.'") (quoting California Div. of Labor Standards Enforcement v. Dillingham Constr., Inc., 519 U.S. 316 (1997)).

At issue here is ERISA's preemption of state laws that provide alternative means of enforcing employee benefit plans. See id. (quoting Travelers, 514 U.S. at 658). A claimant cannot

seek through a tort remedy that which the claimant could not obtain through ERISA. See id. at 983. Thus, state laws that allow employee/beneficiaries to bring causes of action for wrongful denial of plan benefits are preempted. See id. (citing Ingersoll-Rand Co. v. McClendon, 498 U.S. 133 (1990)). Preempted claims can include tortious breach of contract, breach of fiduciary duty and fraud in the inducement. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48 (1987); see also Aetna Health Inc. v. Davila, 542 U.S. 200, 213-14 (2004) (holding that the plaintiffs' claim brought under the Texas Health Care Liability Act for violation of an HMO's duty to exercise ordinary care was preempted by ERISA because the duties imposed by the state law did not arise independently of ERISA). As stated in Dishman, "[c]laimants cannot simply obtain relief by dressing up an ERISA benefits claim in the grab of a state law tort." Dishman, 269 F.3d at 983; see also Bast, 150 F.3d at 1005 (holding that the family of a woman who died from cancer as a result of an ERISA plan administrator's delay in authorizing life-saving treatment could not maintain a suit for breach of contract, loss of consortium or emotional distress because ERISA preempted those claims and provided no remedy for the administrator's alleged bad faith denial of benefits). By contrast, "'. . . preemption does not occur . . . if the state law has only a tenuous, remote or peripheral connection with covered plans, as if the case with many laws of generally applicability.'" Dishman, 269 F.3d at 984 (quoting Travelers, 514 U.S. at 661) (holding that the plaintiff's state law claim for invasion of privacy arising from the Plan's investigation of his claim was not preempted by ERISA because the plaintiff was not seeking "through a tort remedy that which he could not obtain through ERISA.").

Here, the cross-claims are state law claims that arise out of the administration of the Plan and are therefore preempted. The first claim for recovery of benefits due and wrongfully withheld alleges that the Plan is withholding proceeds of the plan that are due to cross-claimants. The second claim for breach of fiduciary duty alleges that the Plan "consider[ed] information in its determinations that falls outside of Crossdefendant's scope of review under ERISA." The third and fourth claims for "negligent administration of the plan" and "breach of agreement - third party beneficiary" allege that the Plan improperly commingled rollover contributions with other 401(k) contributions, failed to properly account for contributions to the 401(k) plan and negligently determined that Plaintiff was entitled to the plan proceeds.

4

The second claim also contains allegations that the Plan assisted with and participated in Plaintiff's fraudulent marriage to Pyara Jagar and her fraudulent immigration to the United States. These allegations also arise out of administration of the Plan because the claims are based on the Plan's award of benefits after Pyara Jagar reported the fact of his second marriage to the Plan. Therefore, they are preempted. But even if these allegations did not arise out of administration of the Plan and instead constituted a claim for marriage or immigration fraud against the Plan, the allegations are fanciful and do not satisfy the Iqbal standard of plausibility, and are therefore dismissed on that ground. There are no factual allegations to support the barebones and far-fetched conclusory claims that the Plan abetted the marriage or the immigration. (Instead, as the Motion for Summary Judgment shows as set forth below, the Plan simply reacted to information provided by Pyara Jagar, as it was entitled to do without further investigation.)

Further, to the extent that cross-claimants seek general monetary damages against the Plan, those damages are not available under ERISA.[1] See, e.g., Spain v. Aetna Life Ins. Co., 13 F.3d 310, 312 (9th Cir. 1993). Accordingly, the Plan's motion to dismiss is granted.

**Motion for Summary Judgment**

Plaintiff seeks an order affirming the Plan Trustee's May 5, 2009 decision, which was administratively affirmed on September 16, 2009, to award Pyara Jagar's 401(k) Plan proceeds to her. Plaintiff also seeks an award of attorney's fees and costs, and an order that the Jagar Defendants hold Plaintiff harmless against any charges imposed by the Plan arising from Defendants' efforts to contest Plaintiff's rights.

**Facts**

Pyara Jagar married Juanita Jagar in 1978. See Counter-Complaint and Cross-Complaint in Interpleader Ex. C ("Administrative Record" or "AR") at DB175. They had three sons, Vijay, Rajesh and Dinesh Jagar. See AR at DB156. They were divorced in 1999. See AR at DB175.

Pyara Jagar was a participant in the Barker Blue Digital Imaging 401(k) Plan. See AR at DB165. On May 21, 2002, Pyara Jagar named his three sons as primary beneficiaries of his 401(k)

---

[1] To the extent that the claim for breach of fiduciary duty is under ERISA, the remedy would not be monetary damages.

5

Plan proceeds. See AR at DB156. He also indicated on that form that he was single. Id. On January 5, 2004, Pyara Jagar added Plaintiff as his spouse on a benefits election form. See AR at DB 158-59. That form indicates that Pyara Jagar and Plaintiff were married on June 26, 2003. Id. There is no evidence showing that he changed his 401(k) beneficiary designation form. Pyara Jagar died on April 16, 2005. Id.

On May 5, 2009, after this lawsuit was filed, the Trustee of the Barker Blue Digital Imaging 401(k) Plan, Eugene Klein, decided that Plaintiff was the sole beneficiary of Pyara Jagar's interest in the Plan. See AR at DB164-DB170. That decision was appealed and affirmed by the Trustee on September 16, 2009. See AR at DB160-DB162.

**Standard of review**

When a Plan grants the Plan Administrator discretionary authority to construe the Plan's terms, the appropriate standard of review is for abuse of discretion. See Sznewajs v. U.S. Bancorp Amended and Restated Supplemental Benefits Plan, 572 F.3d 727, 733 (9th Cir. 2009) (citing Metropolitan Life Ins. Co. v. Glenn, __ U.S. __, 128 S. Ct. 2343 (2008) and Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989)). Here, the Plan gives the Plan Administrator "total and complete discretion to interpret and construe the Plan and to determine all questions arising in the administration, interpretation and application of the Plan." See AR at DB49 at § 9.03. Defendants have not pointed to any contrary Plan provision. Any conflict of interest on the Plan's part should be included as a factor in deciding whether the discretion has been abused. Id. Therefore, the Court will review the Plan's benefits determination for an abuse of discretion.

A conflict of interest generally arises when a plan administrator serves the "dual role" of "both determin[ing] whether an employee is eligible for benefits and pay[ing] benefits out of its own pocket." MetLife, 128 S. Ct. at 2346. The conflict arises because a plan administrator may be influenced to interpret the plan in favor of its own financial interest. Sznewajs, 572 F.3d at 733. To establish a serious conflict that would justify *de novo* review despite a conferral of discretion,

> the beneficiary has the burden to come forward with *"material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary."* Atwood, 45 F. 3d at 1323. If the beneficiary cannot satisfy this burden, the district court should apply the traditional abuse of discretion review. If the beneficiary does satisfy the burden, the plan then bears the burden to show the conflict of interest did not affect the decision to

6

1       deny benefits.

2 Bendixen v. Standard Ins. Co., 185 F.3d 939, 943 (9th Cir. 1999) (emphasis added); see also

3 Firestone Tire, 489 U.S. at 115 ("Of course, if a benefit plan gives discretion to an administrator or

4 fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in

5 determining whether there is an abuse of discretion.").

6       Here, there could be a conflict of interest in theory because the employer, Barker Blue

7 Digital Imaging, Inc., also administers the Plan. See AR at DB83; see also Bendixen, 185 F.3d at

8 943 ("We have previously held with respect to a similar plan that 'given Standard's dual role as both

9 the funding source and the administrator of the Plan, we are faced with an inherent conflict of

10 interest situation, and must take this factor into account.'") (quoting Lang v. Long-Term Disability

11 Plan of Sponsor Applied Remote Tech., Inc., 125 F.3d 794, 797 (9th Cir. 1997)). This apparent

12 conflict, however, is not enough by itself to establish a serious conflict warranting de novo review.

13 Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 876 (9th Cir. 2004)

14 ("Though the claimant obviously had a financial interest in getting the money, while the plan has a

15 financial interest in keeping it, that alone cannot establish conflict of interest in the administrator,

16 because it would leave no cases in the class receiving deferential review under Firestone").

17 Defendants have made no showing that the Plan's decision to distribute Pyara Jagar's 401(k) Plan

18 proceeds to Plaintiff was tainted by self-interest of the company or the Plan. Further, there is no

19 conflict of interest with respect to this particular benefits distribution decision. The amount of

20 money at stake is fixed, and a decision as to the recipient of the money does not have a financial

21 impact on the company. See Sznewajs, 572 F.3d at 733 (holding that the specific decision in that

22 case was not one that had a financial impact on the company because the present value of the

23 anticipated benefits was the same no matter which of the two potential beneficiaries received the

24 benefits). Therefore, the abuse of discretion standard applies in this case without any modification

25 to account for a conflict of interest.

26     **Discussion**

27       Under the abuse of discretion standard, a court must determine whether the Plan

28 Administrator exercised its discretion reasonably:

7

> "A plan administrator's decision to deny benefits must be upheld under the abuse of discretion standard if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith."

Sznewajs, 572 F.3d at 734 (quoting McDaniel v. Chevron Corp., 203 F.3d 1099, 1113 (9th Cir. 2000)). "'Indeed, an administrator's decision is not arbitrary unless it is not grounded on *any* reasonable basis.'" Sznewajs, 572 F.3d at 734-35 (quoting Hensley v. Nw. Permanente P.C. Retirement Plan & Trust,. 258 F.3d 986, 1001 (9th Cir. 2001)) (emphasis in original).

Here, the Trustee's decision does not constitute an abuse of discretion. As stated by the Trustee, the Retirement Equity Act of 1984 added protections for spouses under ERISA. See AR at DB02. Specifically, upon a participant's death, benefits may be paid to beneficiaries other than a participant's spouse only if the spouse has consented in writing to the designation of a different beneficiary. See 29 U.S.C. §§ 1055(b)(1)(C) & (c)(2); AR at DB02. A Plan may treat a participant as unmarried if the participant was married for less than one full year at the time of death. See 29 U.S.C. § 1055(b)(1)(C)(4). Further, the Plan documents provide that the beneficiary designation by a married participant is not valid if it is made on behalf of someone other than the participant's spouse unless the participant's spouse consents in writing to the designation. See AR at DB47.

The Trustee noted that Pyara Jagar informed the company, both before and after he went to India, that he was going to be married in an arranged marriage there. See AR at DB04. He listed Plaintiff as his spouse on a benefits form in 2004, stating that they were married in June 2003. See AR at DB02. The Trustee concluded that Pyara Jagar was married to Plaintiff for more than one year at the time of his death. See AR at DB04. The Trustee noted that the beneficiary designation form listing Pyara Jagar's three sons as beneficiaries was executed prior to Pyara Jagar's marriage to Plaintiff, and there was no evidence that she consented to that designation. See id. The Trustee, therefore, treated Pyara Jagar as dying with no beneficiary designation, which is addressed by the Plan and requires distribution of the proceeds first to the surviving spouse, and if no surviving spouse, then to the surviving children. See AR at DB04-DB05; DB47. The Trustee also noted that this result was consistent with the Plan Summary, which explains that a beneficiary designation of someone other than a spouse requires the spouse's consent in writing. See AR at DB05; DB142.

As described by the Trustee, in Kennedy v. Plan Administrator for the DuPont Savings and

Investment Plan, ___ U.S. ___, 129 S. Ct. 865 (2009), the Court examined the duties of a retirement plan trustee in determining who should receive benefits covered by an ERISA plan following the participant's death. There, a participant failed to remove his ex-wife as a plan beneficiary even though she waived her right to benefits during their divorce proceeding. The Court held that the administrator was not required to engage in fact-finding about the waiver, and instead could pay the benefits to the former spouse as the designated beneficiary. Relying on Kennedy, the Trustee in this case determined that he need not resolve disputes by the various claimants relating to Pyara Jagar's intent, the validity of his marriage, or whether the divorce settlement with Juanita Jagar was fair. See AR at DB05. Instead, the Trustee determined that he need only consider the facts before him that Pyara Jagar informed the Plan that he was married more than one year before his death, that his beneficiary designation did not list his spouse as the beneficiary, that Plaintiff did not consent to the designation of someone other than herself, that there was no state court Qualified Domestic Relations Order awarding an interest in the proceeds to Juanita Jagar through the divorce proceedings, and that under the Plan documents, the listed surviving spouse is entitled to all of the participant's interest in the plan. See AR at DB05-06.

Defendants have provided no evidence to support an argument that the Trustee's decision was an abuse of discretion. None of the facts relied on by the Trustee are disputed. Defendants argue that the marriage of Pyara Jagar and Plaintiff was a fraud and was entered into solely for immigration purposes. Defendants have also put into evidence the registration of the religious marriage of Pyara Jagar and Plaintiff with the Hindu Marriage Registrar, which they argue shows the fraud because the document states that Pyara Jagar and Plaintiff live in India and because listing the marriage in this Register is a purportedly popular way to evade United States immigration laws. See Taggart Decl. Ex. B.[2] However, Defendants have provided no admissible evidence of fraud that demonstrates that the Trustee abused his discretion or that he even had knowledge of this document when he made his decision.

---

[2] Counsel's declaration consists largely of assertions that are made on information and belief, which are entitled to no weight because counsel does not establish that he has personal knowledge of those assertions. See Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1412-13 (9th Cir. 1995).

United States District Court
For the Northern District of California

Defendants also argue that Juanita Jagar is entitled to funds that were rolled over from another account to the 401(k) account. However, there has been no showing that there was a Qualified Domestic Relations Order entitling her to those funds. See 29 U.S.C. § 1144(b)(7) (state laws are preempted, except, for example, to the extent that a state court issues a Qualified Domestic Relations Order awarding benefits to a former spouse or children of a participant); AR at DB02 ("The only relevant exception to ERISA's prohibition on assignment or alienation of retirement benefits is for a Qualified Domestic Relations Order (QDRO), which is a court order relating to marital property rights and issued pursuant to a state domestic relations law."). Therefore, the Trustee did not abuse his discretion on this issue.

Accordingly, Plaintiff's motion for summary judgment is granted. At the hearing, Plaintiff and the Plan agreed that judgment should be entered in favor of Plaintiff at this time, rather than waiting for the Court to resolve the issues of whether Plaintiff is entitled to an award of attorney's fees and whether liability for the Plan's attorneys' fees should be shifted to Defendants. They also agreed that they would endeavor to resolve the fee issues between the parties, beginning with the Plan providing an accounting to Plaintiff. Accordingly, to the extent that Plaintiff's motion relates to her request for attorney's fees or to her request that the Plan's attorney's fees be shifted to Defendants, it is denied without prejudice as moot.

**IT IS SO ORDERED.**

Dated: November 23, 2009

ELIZABETH D. LAPORTE
United States Magistrate Judge